**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RONALD L. TURNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-00749 |
| | § | |
| EDWARD PAVLICEK, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This lawsuit arises from a dispute over the ownership of 27 acres of land in Texas. The plaintiff, Ronald Turner, proceeding pro se, alleges that he owns a one-half interest in this land, with Christopher Turner,[1] and that the remaining one-half interest is divided between the estate of Tommie Turner and Erma Church. (Docket Entry No. 38, ¶¶ 3, 3(a)). According to Turner, the defendants, the Colorado County Abstract Company d/b/a Elliott & Waldron Abstract Company ("Elliott & Waldron"); its owners, Barry and Jim Rutta; Camoil Inc., a Texas corporation owned by Jim Rutta; Jocelyn Renee Gist, executor of the Estate of Radie Jo Snellings ("Gist"); Old Republic National Title Insurance Company; and ten John Doe defendants worked together to transfer unlawfully ownership of Turner's property to Edward Pavlicek. (*See generally id.*, ¶¶ 4–30). Turner asserted numerous state-law claims and one civil-rights claim under 42 U.S.C. § 1982. Barry and Jim Rutta, Elliott & Waldron, and Camoil (collectively, "the Ruttas") moved to dismiss. (Docket Entry No. 42). Old Republic also moved to dismiss. (Docket Entry No. 43). Turner responded to both motions. (Docket Entry Nos. 47, 48). Meanwhile, Pavlicek asserted state-law

---

[1] In Ronald Turner's amended complaint, he clearly states that he holds a one-half interest in the property as a tenant in common with Christopher Turner. (Docket Entry No. 38, ¶ 3(a)). But in Ronald Turner's original complaint, he states that he holds his interest in fee simple, with the remainder to Christopher Turner. (Docket Entry No. 1, ¶ 17). Because the operative complaint here is the amended complaint, this court takes as true the relationship stated in the amended complaint. The court's analysis in this opinion, however, would not change were the relationship stated in the original complaint the correct one.

crossclaims.  (Docket Entry No. 44).  As to these crossclaims, the Ruttas moved to dismiss for failure to state a claim or, alternatively, for a more definite statement or for summary judgment.  (Docket Entry No. 52).  Old Republic moved for a more definite statement.  (Docket Entry No. 56).  Pavlicek responded, (Docket Entry No. 60); and the Ruttas replied, (Docket Entry No. 61).

Based on the amended complaint, the motions and responses, and the applicable law, the Ruttas' motion to dismiss, (Docket Entry No. 42), and Old Republic's motion to dismiss, (Docket Entry No. 43), are granted.  The Ruttas' motion to dismiss Pavlicek's crossclaims, (Docket Entry No. 52), is granted in part and otherwise denied as moot.  The Ruttas' motion for a more definite statement, (Docket Entry No. 52), is granted in part and otherwise denied as moot.  The Ruttas' motion for summary judgment, (Docket Entry No. 52), is denied as moot.  Finally, Old Republic's motion for a more definite statement, (Docket Entry No. 56), is granted.

The reasons for these rulings are explained below.  Turner's waste and quiet-title claims and Pavlicek's quiet-title crossclaim, because they have not been challenged, still remain.

## I.    Background

### A.    The Allegations in Turner's Amended Complaint

The facts, which, if nonconclusory, this court must take as true for purpose of the motions to dismiss Turner's claims, come from Turner's amended complaint.[2] *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).  In February 1990, Robert Turner conveyed a one-half interest in a 27-acre lot located in Colorado County, Texas to his son Ronald Turner, a California resident, and his grandson Christopher Turner.  (Docket Entry No. 38, ¶¶ 3, 12).  Ethel Taylor owned the other one-half interest.  In May 1993, she conveyed her interest to Gladys Taylor Dillard.  Dillard conveyed her interest to her uncle Tommie Turner (now deceased) and her stepsister Erma Church in December 1997.  (Docket Entry No. 38, ¶ 12).  Edward Pavlicek, a

---

[2]  Throughout this opinion, "Turner" refers specifically to Ronald Turner.

Colorado County resident, was interested in leasing the land. Pavlicek approached Turner's neighbor, who was standing on Turner's property. That neighbor told Pavlicek that "Ron Turner owned the property and [the neighbor] would not do anything unless he heard from Ron." (*Id.*, ¶ 20). Nonetheless, on March 1, 2006, Barry Rutta, one of the owners of the title agency that performs title searches and prepares title abstracts, (*id.*, ¶ 7), oversaw and notarized the signing of a deed of trust for this property. The deed of trust identified Edward Pavlicek as the grantor and Radie Jo Snellings the beneficiary. (*Id.*, ¶¶ 18(a)–(c)). Snellings, however, had died on January 24, 2006. (*Id.*, ¶ 15(b)). The deed was recorded with the Colorado County Recorder on March 9, 2006. (*Id.*, ¶ 18(b)).

Turner traveled to Texas on June 12, 2006 and learned of the property sale. He "notified all defendants" that he disputed the sale. Barry Rutta responded that "the old man made a mistake in passing title on the property" and that "it would be rectified." Hearing that, Turner returned to California and awaited correction or rescission of the sale. (*Id.*, ¶ 19). On July 25, 2006, Turner spoke with Kindra Wessel of Old Republic. She told Turner that Elliott & Waldron had "communicated to us that you believe a transaction they closed may have included an element of fraud," and that Old Republic would "be happy to investigate the matter" if Turner sent them a letter detailing the facts and opening a claim. Turner "responded with notice that he wanted to formally open a claim." (*Id.*, ¶ 23(a)).

By February 2007, Turner had provided information from his files to Lisa Bruce, an attorney. (*Id.*, ¶ 23(b)). Bruce's law firm, Irelan Hargis, apparently did work for Old Republic. (*See id.*). Bruce told Turner that she would try "really hard" to contact Pavlicek that week so that they "could develop a plan for further proceedings." Bruce stated that she would keep Turner informed of her progress. (*Id.*)

On January 22, 2008, Pavlicek filed suit in the Colorado County district court to partition the property. Turner filed an answer. The law firm representing Pavlicek in that suit, Irelan Hargis,

later withdrew.  Since then, there has been no activity in that case.  (*Id.*, ¶ 27).

On September 22, 2009, Turner first learned of the deed of trust between Pavlicek and Snellings (since passed to Renee Gist, executor of Snellings's estate).  In particular, Turner learned that the deed granted mineral rights to Pavlicek.  (*Id.*, at ¶¶ 24–25).  According to Turner, the Ruttas pushed for the transaction in order to obtain those rights for themselves and their companies.  (*See id.*, ¶¶ 25–26).

That same day, Old Republic told Turner that he could not file a claim with them and that it had settled with Pavlicek.  Old Republic refused to disclose the settlement's terms to Turner.  (*Id.* ¶ 23(c)).

Turner paid all property taxes through September 30, 2009.  As of October 1, 2010, when Turner filed this lawsuit, he had not received a 2010 property-tax statement.  Apparently, however, he is no longer listed as owning any portion of the property.  As of that same date, Pavlicek had not paid any property taxes.  (*Id.*, ¶¶ 21–22).

Meanwhile, Pavlicek has made allegedly $48,000 worth of improvements to the property. According to Turner, those improvements included adding electricity and a well to the property. Also according to Turner, Pavlicek has placed numerous items on the land, including a travel trailer, a flat-bed tractor trailer, and a tractor, and has burned parts of the land.  (*Id.*, ¶ 28).

Turner seeks in part to clear his title to the land.  He asserts that he filed this suit in federal district court, rather than seeking relief from the Texas state courts, for two main reasons: the actions, allegedly coordinated, of the Ruttas and Old Republic to cloud his title, and the slow pace of the state-court litigation that Pavlicek filed in 2008.  (*See* Docket Entry No. 35).

### B.    The Allegations in Pavlicek's Crossclaims

Pavlicek's crossclaims set out the facts that, if nonconclusory, this court must take as true for purpose of the motion to dismiss those crossclaims.  *See Randall D. Wolcott*, 635 F.3d at 763. In April 2006, Pavlicek met with Snellings, who held herself out as the only owner of the property

at issue. (Docket Entry No. 44, ¶¶ 71–72). Pavlicek purchased the property for $80,000 ($30,000 payable immediately and the balance in $500 monthly installments). (*Id.*, ¶ 72). In deciding to purchase the property, Pavlicek relied on Barry and Jim Rutta and their company, Elliott & Waldron, to conduct the title search. (*Id.*, ¶ 73). Pavlicek made the monthly payments as well as property improvements. (*Id.*, ¶ 74).

In July 2006, Barry Rutta called Pavlicek and told him that there was a mistake in the title to the property, the deed to the property, or both. Rutta told Pavlicek to stop making the monthly payments. Rutta also told Pavlicek "not to worry and that Pavlicek would ultimately retain possession of the land." (*Id.*, ¶ 75). Pavlicek later met with Rutta, who again said that Pavlicek "had nothing to worry about because he as a good faith purchaser." Rutta also said that Old Republic "was taking care of everything and . . . would contact him if a problem arose." (*Id.*, ¶ 76). Based on Rutta's assurances that the property was rightfully his, Pavlicek completed $60,000 worth of improvements to the property. (*Id.*, ¶ 77).

In March 2007, Bruce contacted Pavlicek. Bruce told Pavlicek that she and her law firm, Irelan Hargis, had been hired by Old Republic to represent him in this property dispute. She also told him that Old Republic was attempting to purchase the interests in the property owned by others. (*Id.*, ¶ 78).

In May or June 2007, Brad Irelan of Irelan Hargis contacted Pavlicek. Irelan told Pavlicek that he now represented Pavlicek on Old Republic's behalf and that Jocelyn Gist—the executor of Snellings's estate—had assigned Pavlicek a 25% interest in the property. "Further, [Irelan] told Pavlicek that he would be filing a suit in Colorado County state court in an effort to bully the other purported owners of the property into selling their purported interests." (*Id.*, ¶ 79).

Months later, Berrie Beer, another Irelan Hargis attorney, contacted Pavlicek. Beer told Pavlicek that Old Republic was responsible only for the money he had paid to purchase the property. Beer told Pavlicek "that he would receive $33,000 in cash from Old Republic and would own an

undivided 25% interest in the property" if he accepted this "settlement" with Old Republic. Old Republic never retained, or offered to retain, another attorney to advise Pavlicek on the effect of accepting this settlement. (*Id.*, ¶ 80). Pavlicek asserts that because he believed he had no other options, he accepted Old Republic's settlement offer. (*Id.*, ¶ 81).

Turner then filed this lawsuit, alleging that Pavlicek owned no interest in the property. Pavlicek asked Old Republic to defend and indemnify him under his title policy. "Old Republic refused on the basis that its payment of $33,000 to Pavlicek absolved it of any and all obligations to him" under the policy. (*Id.*). As a result, Pavlicek filed his counterclaim, asserting numerous state-law grounds for recovery against the Ruttas and Old Republic. (*Id.*, ¶¶ 82–83). Like Turner, Pavlicek seeks a declaration clearing title to the property. (*Id.*, ¶ 84).

## II.     The Motions to Dismiss Turner's Amended Complaint

### A.      Abstention

First, the Ruttas and Old Republic argue that because a similar action is pending in the Colorado County district court, this court should abstain from deciding this case. (Docket Entry No. 41, ¶¶ 20–22; 43, Docket Entry No. 43, ¶¶ 15–19). "[T]he federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 144 (5th Cir. 2010) (internal quotation marks omitted). For that reason, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Nevertheless, under the *Colorado River* abstention doctrine, "in 'extraordinary and narrow' circumstances, a district court may abstain from exercising jurisdiction over a case when there is a concurrent state proceeding, based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737–38 (5th Cir. 1999) (quoting *Colorado River*, 424 U.S. at 813,

816) (internal alteration omitted).[3]  The burden of establishing entitlement to abstention rests on the party seeking it.  *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 497 (7th Cir. 2011); *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009); *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 960 (3d Cir. 1993); *Am. Equity Ins. Co. v. Underwriters at Lloyds London & Certain Ins. Cos.*, 211 F.R.D. 298, 301 (S.D. Tex. 2002).

A prerequisite to *Colorado River* abstention is the existence of parallel state and federal proceedings.  *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 n.7 (5th Cir. 2006); *accord Dittmer v. County of Suffolk*, 146 F.3d 113, 117–18 (2d Cir. 1998).  "Suits are parallel if they involve the same parties and the same issues."  *Brown*, 462 F.3d at 395 n.7 (internal quotation marks and alteration omitted).  "[A] precise identity of parties and issues" is not required.  *Transocean Offshore USA, Inc. v. Catrette*, 239 F. App'x 9, 12 (5th Cir. 2011) (citing *Brown*, 462 F.3d at 395 n.7)).  Rather, "[t]wo suits are parallel for *Colorado River* purposes when substantially the same parties are contemporaneously litigating substantially the same issues."  *Adkins*, 644 F.3d at 498; *accord Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 136 n.3 (3d Cir. 2009); *Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006); *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004); *Gannett Co. v. Clark Constr. Gp., Inc.*, 286 F.3d 737, 742 (4th Cir. 2002); *Jones v. Great S. Life Ins. Co.*, 232 F.3d 901 (10th Cir. 2000) (table) (quoting *Allen v. Bd. of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 403 (10th Cir. 1995)); *cf. United States v. Rice*, 605 F.3d 473, 476 (8th Cir. 2010) (noting that the Eighth Circuit's parallelism standard, though similar to the substantially-same test, "requires more precision").  A common subject matter alone is insufficient to establish parallel actions.  *See Dittmer*, 146 F.3d at 118.

---

[3]  The Ruttas and Old Republic contend that abstention under *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), rather than under *Colorado River*, should apply.  *Brillhart* abstention applies when a party has filed suit seeking only declaratory relief.  *See New England Ins. Co. v. Barnett*, 561 F.3d 392, 394 (5th Cir. 2009).  *Colorado River* abstention—not *Brillhart* abstention—applies "whenever an action includes both declaratory and non-frivolous coercive claims for relief" (claims seeking monetary and injunctive relief, amongst others).  *Id.* at 395.  Turner raises nonfrivolous claims for monetary and injunctive relief, as well as declaratory relief.  *Brillhart* abstention does not apply.

7

Assuming the parallelism requirement is satisfied, a federal court must determine whether the case presents "exceptional circumstances" that make abstention appropriate. That determination rests on six factors:

> (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Brown*, 462 F.3d at 395. These factors are not a "mechanical checklist." Instead, they are to be carefully balanced "as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

Here, the Ruttas and Old Republic do not expressly argue that the two actions are parallel for purposes of *Colorado River* abstention. The Ruttas present a conclusory abstention argument that appears to assume that the two actions are parallel. (*See* Docket Entry No. 41, ¶ 22). Old Republic, meanwhile, explains that the state-court action "seeks a partition of the property and determination of each owner's interest." (Docket Entry No. 43, ¶ 15). Old Republic then implies that the two actions are parallel because "the crux of [Turner's federal lawsuit] is to obtain a declaration of the property rights." (*Id.*) Turner responds that neither the Ruttas nor Old Republic have presented any evidence showing that the parties are identical and the claims are identical—and that, in any event, they are not. (Docket Entry No. 47, at 32).

Although Turner slightly misstates the legal standard—only a substantial similarity of parties and issues is required for parallelism—his general point is correct. The burden rests on the Ruttas and Old Republic to show that this court should abstain, and they have not done so. The Ruttas' conclusory implication of parallelism is insufficient and Old Republic failed to present evidence supporting its characterization of the state-court action. But even taking its characterization as true, the cases are not substantially similar. The state-court action apparently seeks a declaration of the

parties' legal rights to the disputed property.  Turner also seeks such relief, but he also alleges that the defendants defrauded him, conspired against him, and were negligent, entitling him to damages and to injunctive relief in addition to a declaratory judgment.  Because the Ruttas and Old Republic have failed to carry their burden of showing parallel proceedings, *Colorado River* abstention is inappropriate.

Even if this court found parallel actions and proceeded to review the factors under *Colorado River*, that review would not change the result.  The factors on balance favor retaining federal jurisdiction.  A brief explanation of the review follows:

(1) *Assumption over res:*  "[T]he presence of an *in rem* dispute in the state court action weighs in favor of abstention."  *BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth.*, 310 F. App'x 490, 492 (3d Cir. 2008) (citing *Moses H. Cone*, 460 U.S. at 19).  The state-court action appears to be solely about determining who owns the disputed property.  This factor favors abstention.

(2) *Inconvenience of fora:*  "When courts are in the same geographic location, the inconvenience factor weighs against abstention."  *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 492 (5th Cir 2006).  Here, the state-court action is in Colorado County, Texas, which is near Harris County.  This factor favors retaining federal jurisdiction.

(3) *Avoidance of piecemeal litigation:*  Assuming the complaint was properly pleaded, both the state and federal courts are asked to decide the issue of who owns the property.  This factor favors abstention.

(4) *Order of jurisdiction:*  "[T]his factor only favors abstention when the federal case has not proceeded past the filing of the complaint."  *Stewart,* 438 F.3d at 492–93.  The defendants have presented no evidence to rebut Turner's suggestion that the state-court action is dormant at best, while this case has proceeded.   This factor favors retaining federal jurisdiction.

(5) *Federal law:* This opinion dismisses the civil-rights claim asserted in this case. But even assuming that only state-law issues are involved, there must be "rare circumstances" for this factor to favor abstention. *See Black Sea Inv. v. United Heritage Corp.*, 204 F.3d 647, 651 (5th Cir. 2000). This factor is "at most neutral." *Id.*

(6) *Adequacy of state-court proceedings:* Turner argues that the slowness of the state-court action is insufficient to show that the state court cannot adequately adjudicate his rights. This factor "can only be a neutral factor or one that weighs against, not for, abstention." *Black Sea*, 204 F.3d at 651.

Therefore, even a balance of the *Colorado River* factors does not show the rare circumstances favoring abstention. Federal jurisdiction is present.

### B.   Failure to Join Necessary Parties

The Ruttas and Old Republic next argue that this action should be dismissed for failure to join necessary parties. Fed. R. Civ. P. 12(b)(7). They point out that Turner's complaint alleges that he shares a one-half interest in the property with Christopher Turner and that the remaining one-half interest is shared between Erma Church and the estate of Tommie Turner. Assuming that to be true, the defendants contend, Christopher Turner, Erma Church, and the estate of Tommie Turner are necessary parties under Federal Rule of Civil Procedure 19, and Turner's failure to join them requires dismissal under Rule 12(b)(7). (*See* Docket Entry No. 41, ¶ 19; Docket Entry No. 43, ¶ 14). Turner responds that the Ruttas and Old Republic waived this argument by not raising it in their first Rule 12 motion. He also responds that, even if the issue is not waived, he "owns an undivided interest in the land in question," making it unnecessary to join others who may have an interest in the same property. (Docket Entry No. 47, at 29–30).

Rule 12 generally requires that defendants raise motions to dismiss "before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). "[T]he only time limitation on Rule 12(b)

10

motions is that they must be made 'before pleading[.]'"  5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1361 (3d ed. 2004).[4]

On September 21, 2010, this court ordered Turner to file an amended complaint that responded to pleading deficiencies raised by Old Republic.  (Docket Entry No. 6 (Old Republic's motion for a more definite statement; Docket Entry No. 37 (order)).  Turner filed the amended complaint on October 1, 2010.  (Docket Entry No. 38).  On October 29, 2010, the Ruttas filed two separate documents—first, a motion to dismiss, (Docket Entry No. 41); and second, an answer to Turner's amended complaint.  (Docket Entry No. 42).  The document labeled as a motion to dismiss was docketed before the document labeled as the answer.  The two documents are identical.  Each begins with the Rule 12(b) defenses and then the answer to the amended complaint.  The Ruttas therefore complied with Rule 12(b).  To the extent that Turner bases his untimeliness contention on the fact that the Ruttas did not raise a Rule 12(b)(7) defense in their motion to dismiss Turner's original complaint, (Docket Entry No. 4), that contention also fails.  This court's order that Turner file an amended complaint reset the pleadings.  *See Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) ("Because a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses."); *accord French v. Wachovia Bank*, 574 F.3d 830, 835 (7th Cir. 2009); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306–07 (6th Cir. 2000).  The Ruttas' Rule 12(b)(7) defenses are properly before this court.

As for Old Republic, it filed its Rule 12(b) defenses on November 1, 2010.  (Docket Entry No. 43).  It has not filed an answer.  Old Republic's defenses are timely as well.

Rule 12(b)(7) allows dismissal for "failure to join a party under Rule 19."  The rule "provides

---

[4]  Rule 12(h) presents exceptions to the general timeliness rule.  In particular, Rule 12(b)(6) and (b)(7) defenses may be made "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." FED. R. CIV. P. 12(h)(2).  The motions were timely, as will be explained, rendering Rule 12(h) unnecessary here.

for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue.  It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003).  A court must first determine if a person must be joined to the lawsuit under Rule 19(a).  Joinder is required under Rule 19(a) if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).  If joinder would destroy the court's jurisdiction, the court must then determine under Rule 19(b) whether the absent party is indispensable.  *See Hood ex rel. Miss. v. City of Memphis, Tenn.*, 570 F.3d 625, 628–29 (5th Cir. 2009).  That rule lists four factors to be considered:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b).  If the balance of these factors results in a finding that the absent party is indispensable, then the case must be dismissed.  If not, the case may continue without joining the additional party.  *See Hood*, 570 F.3d at 629.  In the Fifth Circuit, "[w]hile the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Hood*, 570 F.3d at 628 (internal quotation marks omitted); *but see Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (holding that burden always rests with person raising 12(b)(7) defense).  At the same time, however, granting a motion to dismiss under Rule 12(b)(7) is inappropriate if the parties fail to present

12

evidence needed to allow the court to make an informed decision.  *See Pickle v. Int'l Oilfield Divers, Inc.*, 791 F.2d 1237, 1242 (5th Cir. 1986); *Fed. Land Bank Ass'n of S. Ala., FLCA v. Cornelius & Salhab*, No. H-09-3115, 2010 WL 3545406, at *3 (S.D. Tex. Sep. 9, 2010); *Calgon Corp. v. Nalco Chem. Co.*, 726 F. Supp. 983, 990 (D. Del. 1989).

The Ruttas and Old Republic present only conclusory allegations that joinder of Erma Church and the estate of Tommie Turner is required.  (*See* Docket Entry No. 41, ¶ 19; Docket Entry No. 43, ¶ 14).  They present no arguments or evidence supporting that conclusion.  Moreover, they fail to note that their approach would require the joinder of Christopher Turner, given that he also holds an interest in the disputed property.  (*See* Docket Entry No. 38, ¶ 12).  Without  evidence in the record, this court cannot guess as to whether the parties may be required parties under Rule 19(a).  And even assuming they are, their citizenship is not in the record.  Therefore, this court would be unable to determine whether joinder would destroy subject-matter jurisdiction and whether these parties are indispensable under Rule 19(b).  Because the record provides no basis for this court to make the necessary determinations to grant the motion to dismiss under Rule 12(b)(7), it is denied.

### C.      Failure to State a Claim

The Ruttas and Old Republic argue that Turner's amended complaint should be dismissed under Rule 12(b)(6).  That rule allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Because Turner is proceeding pro se, his pleadings are held "to less stringent standards than formal pleadings drafted by lawyers."  *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).  Nonetheless, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face" to withstand a Rule 12(b)(6) motion.  *Iqbal*, 129 S. Ct. at 1949.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Facial plausibility "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor is facial plausibility "akin to a 'probability requirement'; rather, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Facial plausibility requires "the plaintiff [to] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

A complaint does not suffice where it merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentiello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). Although "[a] complaint does not need detailed factual allegations, [it] must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks omitted).

When a plaintiff's complaint fails to state a claim, a district court generally should provide the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case"); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir.2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). If amending the complaint would be futile, however, the court may

dismiss without leave to amend. *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010); *see also* 6 FEDERAL PRACTICE AND PROCEDURE § 1487 ("several courts have held that if a complaint as amended could not withstand a motion to dismiss or summary judgment, then the amendment should be denied as futile").

Turner's complaint, liberally construed, presents one federal-law claim (civil rights) and several state-law claims (fraud, negligent misrepresentation, general negligence, civil conspiracy, waste, and quiet title).  The Ruttas and Old Republic have moved to dismiss all of these claims, except for the waste and quiet-title claims (both of which are asserted specifically against Pavlicek), for failure to state a claim.

Before turning to the specific claims, this court notes the Ruttas and Old Republic's shared argument that all of Turner's claims fail because, taking the factual allegations in the complaint as true, he has never given up ownership of the land and cannot have suffered an injury.  (Docket Entry No. 41, ¶¶ 4–6; Docket Entry No. 43, at ¶¶ 4–5).  Although Turner's complaint literally can be read as saying that he continues to own the land, it does not take a liberal construction of the complaint to understand Turner's basic theory: "I rightfully owned a one-half interest in the land; the defendants unlawfully took away that interest from me; despite them doing so, that interest still belongs to me." Turner's complaint alleges an injury.  The Rule 12(b)(6) arguments on the specific causes of action are analyzed below.

## 1.     The Civil-Rights Claims

Turner first claims that the Ruttas and Old Republic conspired to deny Turner's due-process and equal-protection rights.  In doing so, he nominally brings his claim under 42 U.S.C. § 1982, which "bars all racial discrimination, private as well as public, in the sale of rental or property[.]" *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968); *see also Jackson v. Biedenharn*, No. 10-30909, 2011 WL 2447695 (5th Cir. June 20, 2011) ("Section 1982 prohibits racial discrimination in inheriting, purchasing, leasing, selling, holding, and conveying 'real and personal property.'").

15

"Because of their common origin and purpose, § 1981 and § 1982 are generally construed in tandem." *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996) (citing *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 440 (1973)); *accord Williams v. Dillard's Dep't Stores, Inc.*, 211 F. App'x 327, 329 (5th Cir. 2006).  Under either section, the plaintiff must prove three elements: "(1) that she is a member of a racial minority; (2) that [the defendant] had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute[.]"  *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001); *see also Williams*, 211 F. App'x at 328.

Turner's complaint fails to allege that the Ruttas and Old Republic intentionally discriminated against him on account of his race, or how any discrimination concerned Turner's ownership of the disputed property.  In opposing the motion to dismiss, Turner alleges a long history of discrimination in Colorado County and a Colorado County judicial system that today engages in discriminatory behavior.  (Docket Entry No. 47, at 27–28).  Even taking those facts as true, they fail to allege that the Ruttas and Old Republic discriminated against Turner, as required to state a cause of action under § 1982.  And the allegations, even taken as true, that the defendants have engaged in "stonewalling" litigious behavior and have conspired together to take Turner's property have nothing to do with racial discrimination, at least as currently pleaded.  Turner's civil-rights claim therefore fails to state a cause of action upon which relief can be granted.  The Ruttas' and Old Republic's motions to dismiss this claim is granted.  Turner may amend no later than **October 31, 2011**.[5]

> 2.      *Fraud*

---

[5]   This court notes that, although Turner pleaded this claim under § 1982 and confirmed its status as a § 1982 claim through the arguments raised in his response to the motion to dismiss, (*see* Docket Entry No. 42, at 26–27), the claim sounds more in § 1983.  Turner's main complaint is that the Ruttas and Old Republic deprived him of his equal-protection and due-process rights.  (Docket Entry No. 38, at ¶¶ 45–47).  Section 1983, not § 1982, "prohibits state officials from depriving citizens of 'any rights, privileges, or immunities secured by the Constitution."  *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020, 3077 (2010) (quoting 42 U.S.C. § 1983) (emphasis omitted).  To succeed on a § 1983 claim, however, Turner would need to satisfy the state-action requirement.  *See generally, e.g.*, *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005).  The defendants are private individuals and there is no allegation of any facts that could suggest an ability to amend to satisfy the state-action requirement.

Turner next claims that the Ruttas and Gist engaged in fraud when they conveyed the disputed property to Pavlicek knowing that it was owned by someone else.  (*See generally* Docket No. 38, at ¶¶ 38–43).  The Ruttas contend that because the property was conveyed to Pavlicek without Turner's knowledge, no fraud could have been committed directly against Turner at that time.  The Ruttas also contend that Turner failed to plead his fraud allegations with the particularity required by the Federal Rules.

Texas law provides a common-law and a statutory cause of action for fraud.  Under common law, a plaintiff must establish six elements to succeed on a fraud claim:

> (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).  Under statutory fraud, a plaintiff must establish five elements:

> (1) a representation of a material fact was made, (2) the representation was false, (3) the representation was made to induce a person to enter a contract, (4) the person relied upon that representation in entering the contract, and (5) the false representation caused an injury. code provides an express right of action for securities and real-estate

*See* TEX. BUS. & COMMERCE CODE § 27.01; *Robbins v. Capozzi*, 100 S.W.3d 18, 26 (Tex. App.—Tyler 2002, no pet.); *accord, e.g.*, *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 807 (S.D. Tex. 2009).  "Statutory fraud differs from common law fraud 'only in that it does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages.'"  *In re Enron*, 623 F. Supp. 2d at 807 (quoting *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 249 (Tex. App.—Waco 2001, pet. denied)).

Although the complaint asserts that the Ruttas and Gist had knowledge of the false representations, the complaint is silent as to whether Turner is suing under Texas common law or for statutory fraud.  That defect alone requires dismissal for failure to state a claim, for it fails to place

17

the Ruttas and Gist on notice of what claim Turner is raising.  But assuming that Turner had specifically pleaded common-law fraud, his complaint remains impermissibly vague.  "Generally, a person is not entitled to relief for a fraudulent representation if it was not made to that person directly."  41 TRACY BATEMAN FARRELL, TEXAS JURISPRUDENCE: FRAUD AND DECEIT § 54 (3d ed. 2011).  Texas law recognizes, however, a third-party exception to this general rule.  In particular,

> a person who makes a false representation may be liable to a third person, to whom the misrepresentation was not directly made, if the person making the misrepresentation [1] had the intent or knowledge that it should be repeated to a third person and [2] intended or knew that the third person would act in reliance on the misrepresentation.

*Moore v. Altra Energy Techs., Inc.*, 321 S.W.3d 727, 736 (Tex.App—Houston [14th dist.] 2010, pet. denied); *see also Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001). Turner concedes that the Ruttas and Gist never made any fraudulent misrepresentations directly to him.  Turner fails to plead any basis to infer that the Ruttas and Gist intended their allegedly fraudulent representations to be communicated to him.  He also fails to plead any basis to infer that the Ruttas and Gist intended him to act on those fraudulent misrepresentations.  Rule 9(b) requires that fraud allegations must "state with particularity the circumstances constituting fraud or mistake." *See* FED. R. CIV. P. 9(b).  Turner's fraud claim fails to do so and must be dismissed, without prejudice and with leave to amend.  Any amendment must be filed no later than **October 31, 2011**.

### 3.    *Negligent Misrepresentation*

Turner claims that the Ruttas are liable to him for making false representations to Pavlicek that Snellings was the sole owner of the disputed property.  Turner also claims that the Ruttas are liable for making false representations to him that the disputed property would be returned to him. (Docket Entry No. 38, ¶¶ 50–51).  The Ruttas first contend that this claim is time-barred under the Texas two-year statute of limitations.  (Docket Entry No. 41, ¶ 7); *see also HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (stating that two-year limitations period applies to negligent-misrepresentation claims).  Turner responds that the discovery rule tolled the limitations

period,  making his claim timely.  (Docket Entry No. 47, at 14).

Dismissal under Rule 12(b)(6) on the basis of the statute of limitations is appropriate only if "the running of the statute is apparent on the face of complaint."  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotation marks omitted).  In Texas, "[c]auses of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy."  *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, — S.W.3d —, 2011 WL 1226100, at *4 (Tex. 2011).  Like most other states, Texas recognizes the discovery rule, which "tolls the limitations period until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury caused by the wrongful act of another[.]"  *Lozada v. Farrall & Blackwell Agency, Inc.*, 323 S.W.3d 278, 289 (Tex. App.—El Paso 2010, no pet.).  As the Texas Supreme Court has explained, however:

> [T]he discovery rule does not linger until a claimant learns of actual causes and possible cures.  Instead, it tolls limitations only until a claimant learns of a wrongful injury.  Thereafter, the limitations clock is running, even if the claimant does not yet know: the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.

*PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex. 2004); *see also Exxon Corp.*, 2011 WL 1226100, at *8 (confirming *PPG Industries*'s rule).  For that reason, where a plaintiff has actual knowledge of an alleged injury, that plaintiff "must exercise reasonable diligence to investigate the suspected harm and file suit, if at all, within the limitations period."  *Exxon Corp.*, 2011 WL 1226100, at *8.  Finally, "[w]hen a cause of action accrues is normally a question of law."  *Id.* at *4.

Turner alleges that he learned of the alleged wrongful sale of his property on June 12, 2006.  He further alleges that he disputed the sale with all defendants on that date.  (Docket Entry No. 38, ¶ 19).  Turner's own pleadings show that he knew of an injury to his property interest on that date, triggering the two-year statute of limitations.  That Turner did not know of all the injurious effects of the injury until later does not toll the limitations period.  *See PPG Indus.*, 146 S.W.3d at 93–94.

Turner's own pleadings show that on June 12, 2006, he knew that the Ruttas took part in the allegedly wrongful sale of his property.  He could have promptly sought a judicial remedy for the allegedly wrongful sale.  *See Exxon Corp.*, 2011 WL 1226100, at *8.  His negligent-misrepresentation claims filed on March 5, 2010 are untimely.

The fraudulent-concealment doctrine, which Turner also invoked, does not apply.  Under that doctrine,

> where a defendant is under a duty to make a disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence.

*Trousdale v. Henry*, 261 S.W.3d 221, 235 (Tex. App.—Houston [14th dist.] 2008, pet. denied).  There is no allegation that would provide a basis for the fraudulent-concealment doctrine to apply.  To the contrary, the allegations show that on June 12, 2006, Turner knew facts that he believed showed that the Ruttas had participated in the allegedly unlawful sale of his property.  These are facts that "would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action."  *Id.*  (also noting that this standard is the same as the discovery-rule standard).  The Ruttas' motion to dismiss these claims are granted, without leave to amend because Turner's own pleadings show that amendment would not cure the limitations defect and would therefore be futile.

### 4.    *Negligence*

Turner asserts negligence claims against the Ruttas and Old Republic.  He alleges that the Ruttas committed legal malpractice by breaching certain ethical duties they owed to him when they assisted in the sale of the property.  Turner also claims that Old Republic was negligent in conducting a title search. (Docket Entry No. 38, ¶¶ 53–55).[6]  The Ruttas and Old Republic move to dismiss these

---

[6]  Turner pleads these claims as ones for "negligence." (Docket Entry No. 38, ¶ 55).  Liberally construing Turner's pro se complaint, however, this court determines that Turner is attempting to plead claims for malpractice.  Nevertheless, the specific nomenclature does not affect the outcome.

claims as untimely under Texas's two-year statute of limitations. (Docket Entry No. 41, ¶ 11; Docket Entry No. 43, ¶¶ 8–9).

"A party must assert a claim for negligence no more than two years after the day the cause of action accrues." *Hennen v. McGinty*, 335 S.W.3d 642, 649 (Tex. App.—Houston [14th dist.] 2011, pet. filed) (citing TEX. CIV. PRAC. & REM. CODE. § 16.003); *see also, e.g.*, *Trousdale*, 261 S.W.3d at 234 (stating that two-year statute of limitations apply to legal-malpractice claims). Turner's complaint alleges that he knew of the alleged underlying injury, and of the Ruttas' and Old Republic's involvement in it, beginning on June 12, 2006 as to the Ruttas, (Docket Entry No. 38, ¶ 19), and no later than July 25, 2006 as to Old Republic. (*Id.*, ¶ 23). His negligence claims accrued on those dates, making his claims filed against the Ruttas and Old Republic on March 5, 2010 untimely. The Ruttas' and Old Republic's motion to dismiss these claims are granted, without leave to amend because amendment would not cure the limitations defect and would be futile.

### 5.    Civil Conspiracy

Turner alleges that the Ruttas, Old Republic, and Pavlicek conspired to take his interest in the disputed property. (*See generally* Docket Entry No. 38, ¶¶ 32–35). Under Texas law, a civil-conspiracy claim has five elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied). "Conspiracy is a derivative tort." *Chu v. Hong*, 249 S.W.3d 441, 444 (Tex. 2008). "That is, a defendant's liability for conspiracy depends on participating in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). "If the underlying tort claim fails, the conspiracy claim fails as well as a matter of law." *Wingert v. DeVoll*, No. 03-09-00440-CV, 2010 WL 3271744, at *6 (Tex. App.—Austin Aug. 20, 2010 pet. denied) (citing *Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 642 (Tex. App.—Fort Worth

1998, no pet.)).

It is unclear whether Turner's civil-conspiracy claim rests on his fraud claim alone, or on his other claims as well.[7]  Regardless, all claims raised against the Ruttas and Old Republic have been dismissed for failure to state a claim, with leave to amend.  The Ruttas' and Old Republic's motion to dismiss the derivative civil conspiracy claim is also granted, with leave to amend no later than **October 31, 2011.**

### III.     Pavlicek's Crossclaims

Pavlicek asserts numerous crossclaims against his codefendants.  Against the Ruttas, he asserts causes of action for negligence, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Consumer Protection Act ("DTPA"), and breach of fiduciary duty.  (Docket Entry No. 44, ¶ 82).  Against Old Republic, he asserts causes of action for breach of contract and violations of the Texas Insurance Code.  (*Id.*, ¶ 83).  He also brings a general claim to quiet title.  (*Id.*, ¶ 84).  The Ruttas have moved to dismiss, for a more definite statement, or for summary judgment.  (Docket Entry No. 52).  Old Republic has moved for a more definite statement.  (Docket Entry No. 56).

#### A.     The Motion to Dismiss Based on Lack of Subject-Matter Jurisdiction

The Ruttas argue that this court lacks subject-matter jurisdiction over Pavlicek's crossclaims.  According to the Ruttas, the only basis for federal jurisdiction is diversity.  *See* 28 U.S.C. § 1332.  Because the parties are nondiverse and Pavlicek seeks less than $75,000 in damages, his crossclaims fail both requirements for diversity jurisdiction.  (Docket Entry No. 52, ¶¶ 4–5).  Turner does not challenge either assertion.  Instead, he responds that this court may exercise supplemental jurisdiction over his crossclaims against the Ruttas.  (Docket Entry No. 60, ¶ 1).  The Ruttas respond that

---

[7]   As the Ruttas and Old Republic point out, Turner could not base his civil-conspiracy claim on his negligent-misrepresentation and negligence claims.  "Civil conspiracy requires specific intent to agree to accomplish an unlawful purpose by unlawful means."  *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 80 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (internal quotation marks and alteration omitted).  "Given the specific intent requirement, parties cannot engage in a civil conspiracy to be negligent."  *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996).  Even assuming that Turner had successfully pleaded negligent misrepresentation and negligence, any claim that the defendants conspired to commit those torts would be dismissed with prejudice and without leave to amend.

"Pavlicek either ignores or misunderstands their arguments."  (Docket Entry No. 61, ¶ 1).

When a federal court has subject-matter jurisdiction over the complaint, "the court may have ancillary jurisdiction over additional claims or parties that it may not have had otherwise."  *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 236 (5th Cir. 1988); *accord State Nat. Ins. Co. v. Yates*, 391 F.3d 577, 580 n.17 (5th Cir. 2004).  One such additional claim is a crossclaim raised under Rule 13(g).  *Zurn Indus.*, 847 F.2d at 236–37.  That rule allows a party to assert a claim "against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action."  FED. R. CIV. P. 13(g).  "It is well settled in this circuit that a federal district court may consider ancillary cross claims after disposing of a main claim within its jurisdiction."  *Molett v. Penrod Drilling Co.*, 919 F.2d 1000, 1004 (5th Cir. 1990).

The Ruttas do not dispute that Pavlicek's crossclaims properly fall under Rule 13(g).  The Pavlicek's crossclaims arise out of the same controversy—the title to the property—as the complaint.  Although this court has dismissed all of Turner's claims against the Ruttas and Old Republic (Pavlicek has not moved to dismiss Turner's waste and quiet-title claims), the dismissal was not based on lack of jurisdiction.  This court has subject-matter jurisdiction over the crossclaims.

### B.  The Ruttas' Motions

#### 1.  The Motion to Dismiss Based on Limitations

The Ruttas assert that the limitations period began to run in April 2006, when Pavlicek closed on the property, making all of his claims untimely.  (Docket Entry No. 52, ¶¶ 1–2).  Pavlicek responds that the limitations period began to run on March 5, 2010, when Turner filed this lawsuit, because until then he had been assured by the Ruttas and Old Republic that "any and all issues had been taken care of and that he owned the property at issue in this suit."  (Docket Entry No. 60, ¶ 4).

The Texas two-year statute of limitations applies to Pavlicek's negligence, negligent-misrepresentation, and DTPA claims.  *See Exxon Corp.*, 2011 WL 1226100, at *4 (negligent

misrepresentation); *Hennen*, 335 S.W.3d at 649 (negligence and DTPA).  The four-year statute of limitations applies to Pavlicek's claim for breach of fiduciary duty.  *See Holland v. Lovelace*, — S.W.3d —, 2011 WL 3805519 (Tex. App.—Dallas 2011, no pet.) (citing TEX. CIV. PRAC. & REM. CODE. § 16.004(a)(5)).  The question is when Pavlicek's causes of action accrued.

Pavlicek's limitations period began to run when he learned of a wrongful injury.  *See, e.g.*, *PPG Indus.*, 146 S.W.3d at 93–94.  The crossclaims's allegations do not show that Pavlicek had any basis to know of a problem with his title to the property until July 2006 at the earliest, when Barry Rutta contacted him to tell him to stop making monthly payments "because there was a mistake in the title and/or deed to the property."  (Docket Entry No. 44, ¶ 75).  The complaint does not indicate whether Rutta told Pavlicek why there was a "mistake" or that there was a dispute over ownership. But Pavlicek's own pleading states that he learned in March 2007 that Old Republic "[was] in the process of attempting to buy the remainder of the property *from the other purported owners* of the 27 acre tract of land."  (*Id.*, ¶ 78 (emphasis added)).  The crossclaim shows Pavlicek knew or should have known of the wrongful injury — that he might not own the property he had purchased — no later than March 2007.

Pavlicek filed his crossclaims on November 16, 2010.  (Docket Entry No. 44).   His negligence, negligent-misrepresentation, and DTPA claims are all untimely.  The Ruttas' motion to dismiss those claims is granted, without leave to amend because amendment would not cure the limitations defect and would be futile.

Pavlicek's claim for breach of fiduciary duty, however, is timely.  The motion to dismiss that claim based on limitations is denied.

### 2.   The Motion for a More Definite Statement

A party is entitled to a more definite statement when a portion of the complaint "is so vague or ambiguous that the party cannot reasonably prepare a response."  FED. R. CIV. P. 12(e).  "A motion for more definite statement is generally disfavored and is used to provide a remedy only for an

unintelligible pleading rather than a correction for lack of detail." *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 707 (S.D. Tex. 2011) (internal alteration omitted) (quoting *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2009)); *see also* 5C FEDERAL PRACTICE AND PROCEDURE § 1376 ("The 1948 Amendment of Federal Rule 12(e) makes it clear that the availability of a motion for a more definite statement is quite restricted.").

"Whether to grant a motion for a more definite statement is a matter within the discretion of the trial court." *Russell v. Grace Presbyterian Village*, No. 3:05-cv-0030, 2005 WL 1489579, at *3 (N.D. Tex. June 22, 2005) (citing *Mitchell v. E-Z Way Towers, Inc.,* 269 F.2d 126, 130 (5th Cir. 1959)). "When a party moves for a more definite statement under Rule 12(e), the court is granted discretion to determine whether the complaint is so vague that the moving party cannot reasonably be required to frame a responsive pleading." *Chapman v. Dallas County Cmty. Coll. Dist.*, No. 3:05-cv-1809, 2006 WL 3442057, at *4 (N.D. Tex. Nov. 29, 2006) (citing *Mitchell,* 269 F.2d at 130). When defendants are complaining of matters that can be clarified and developed during discovery, not matters that impede their ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted. *Arista Records LLC v. Greubel,* 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006) (citing *Mitchell,* 269 F.2d at 132). Nevertheless, parties may rely on Rule 12(e) as a way to enforce the minimum requirements of notice pleading. 5 FEDERAL PRACTICE AND PROCEDURE § 1203 ("[T]he form and sufficiency of a statement of a claim for relief under Rule 8(a)(2) may be tested . . . by a motion for a more definite statement[.]").

Under Texas law, there are three elements to a claim for breach of fiduciary duty: "(1) a fiduciary relationship between the plaintiff and the defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or a benefit to the defendant as a result of the breach." *Cluck v. Mecom*, — S.W.3d —, 2011 WL 883781, at *2 (Tex. App—Houston [14th dist.] 2011, no pet.) (citing Texas caselaw). The Ruttas contend that the crossclaims fail to allege facts showing what fiduciary duty existed between them and Pavlicek and how they breached that

duty. (Docket Entry No. 52, ¶ 9). Pavlicek responds that the Ruttas "are well aware of the basis for Pavlicek's claims against them": the failure to discover title defects and the representation to Pavlicek that he could continue improving his property. (Docket Entry No. 60, ¶ 6).

Pavlicek pleaded a series of facts, (*see* Docket Entry No. 44, ¶¶ 71–81), and then concluded by "bring[ing] a cross-claim against [the Ruttas] for claims of negligence, negligent misrepresentation, for violations of the Texas Deceptive Trade Practices-Consumer Protection Act, and for breach of fiduciary duty." (*Id.*, ¶ 82). The series of facts do not include any allegations concerning how the Ruttas breached a duty owed to Pavlicek. Pavlicek's crossclaim appears to assert that a fiduciary duty was breached when the Ruttas made two representations to Pavlicek that turned out to be incorrect: that the title was clear; and, later, that he could continue to make improvements on the property because the title problem would be resolved in his favor. (*See id.*, ¶¶ 73, 75–76, 82). Although those facts support a claim for negligent misrepresentation, they do not provide a basis to plead a breach of a fiduciary duty. And it is unclear whether Pavlicek is asserting that he was damaged not only that he sustained $60,000 in damages from the improvements he made to the property, (*Id.*, ¶ 82), but also by purchasing the property in the first place. In sum, Pavlicek's crossclaim for breach of fiduciary duty suffers from more than a mere lack of detail. As currently pleaded, the crossclaim lacks facts that the Ruttas reasonably would need to respond to it. The Ruttas' motion for a more definite statement as to this crossclaim is granted. Pavlicek may amend no later than **October 31, 2011.**

### C.   Old Republic's Motion for More Definite Statement

Old Republic also moves for a more definite statement as to Pavlicek's crossclaims against it. Specifically, Old Republic contends that the fraudulent-inducement claim lacks the specificity required by Rule 9(b). Old Republic also contends that Pavlicek's blanket assertion that it "breached its obligations under the title policy" provides no notice of how it did so. Old Republic finally contends that Pavlicek's crossclaim fails to point to the specific provisions of the Texas Insurance

Code Old Republic allegedly violated and how they were violated. (Docket Entry No. 56, ¶¶ 2–4). Pavlicek briefly responds  that "Old Republic is well aware of the basis of the claims against it." (Docket Entry No. 60, ¶ 7).

The fraudulent-inducement crossclaim is unclear.  It is unclear whether it is asserted as a separate claim or whether the allegations are for the purpose of asserting claims for breach of contract and violations of the Texas Insurance Code.  Assuming that the crossclaim does assert an independent cause of action for fraudulent inducement, it fails to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see also Shandong Yinguang Chem. Indus,. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) ("Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out." (internal quotation marks omitted)).  The crossclaim also fails to identify which provisions of the Old Republic policy Pavlicek is alleging were breached.  And the crossclaim fails to identify which provisions of the Texas Insurance Code Pavlicek is alleging were breached.  As pleaded, the crossclaims are so vague that Old Republic cannot reasonably prepare a response. *See* FED. R. CIV. P. 12(e).  Old Republic's motion for a more definite statement is granted.  Pavlicek may amend no later than **October 31, 2011**.

## IV. Conclusion

A.    The Ruttas' motion to dismiss, (Docket Number No. 41), is granted.  Leave to amend is granted only for Turner's civil-rights, fraud, and civil-conspiracy claims.

B.    Old Republic's motion to dismiss, (Docket Number No. 43), is granted.  Leave to amend is granted only for Turner's civil-rights and civil-conspiracy claims.

C.    The Ruttas' motion to dismiss, (Docket Number No. 52), is granted as to Pavlicek's negligence, negligent-misrepresentation, and DTPA crossclaims, all without leave to amend.  Their motion for a more definite statement, (*id.*), is granted as to Pavlicek's breach-of-fiduciary-duty crossclaim.  Their motion to dismiss, (*id.*), as to Pavlicek's breach-of-fiduciary-duty crossclaim; their motion for a more definite statement, (*id.*), as to Pavlicek's negligence, negligent-misrepresentation, and DTPA crossclaims; and their motion for summary judgment, (*id.*), are denied as moot.

D.    Old Republic's motion for a more definite statement, (Docket Number No. 56), is granted.

27

Any amended pleading must be filed no later than **October 31, 2011**.  A status and scheduling conference will be held on **November 15, 2011** at **8:30 a.m.**

SIGNED on September 22, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge